I think we'll call up the next case please. Okay, we'll stand by. I just need a few minutes for a discussion. Okay, please call the case. 17-29-60. When you said your name was violated in your request for the Podar. When your case was called, please step up and approach the podium. Tell us your name and which party you represent. You will each have 15 minutes for your argument. I advise the appellant to save a few minutes for rebuttal. Remember, we have read the brief, we have read the record, we're very familiar with your arguments. So please get to your strongest or most important argument first. And 15 minutes. And we're not strict clock watchers, but if you're going on too long, I will ask you to wrap up. Thank you, Your Honor. Eric Fulmer, I represent the appellants Villal and Vodica-Podar. Rosa Tumial, I'm sorry, for Plano-Wilmington Trust. Thank you. Counsel, whenever you're ready. Good afternoon. May it please the Court, Counsel, my name is Eric Fulmer. As stated previously, I represent the appellants Villal and Vodica-Podar. This matter deals with a mortgage foreclosure case. Although that seems like a very simple thing, mortgage foreclosure cases almost always result in an individual or individuals losing their homes. Given those type of stakes, at the very least, these homeowners should be assured that all proper procedures by the mortgagee, the bank, the plaintiff, and in turn the court, are followed prior to the court entering an order of possession. This matter illustrates instances when these procedures were seemingly ignored or excused. This is first evidenced by the so-called acceleration notice sent to the porters. This notice is required to be sent pursuant to paragraph 22 of the mortgage. Now this court is quite familiar with paragraph 22 acceleration notices because it ruled upon the exact same paragraph in a previous case, cafe, bank, fee, esoterro, although in that case it was paragraph 21. There, the court held that failing to give the acceleration notice with the specific information mandated by paragraph 21 of the mortgage, here paragraph 22, divested the lender the right to bring a foreclosure action. The acceleration letter or notice that appears in the record here does not give such specific information. Mainly, it does not state to the borrowers that they would have the right to reinstate their mortgage after acceleration. It does not say anything about future judicial proceedings, although it does say something about foreclosure proceedings generally. It also said that the defendant themselves would have to bring a court action to raise any defenses that they might have to acceleration. These defects are very similar to the ones in esoterro, although admittedly esoterro also had a few more. Unlike esoterro, however, the acceleration letter in this matter seems to provide all the information that was required by the mortgage. Are you arguing for like a technical compliance? It's kind of a semantical argument. It's very clear the mortgage itself says you must do X, Y, and Z. The plaintiff or the bank or the lender is the entity that creates the mortgage. It would seem simple for it to provide a letter to the borrowers that says, as in the mortgage we prepared, you need to do X, Y, and Z, rather than have a court or someone else subjectively look at it and say, well, does A equal X? Does B equal Y? I mean, this is a contract. Well, now, let me ask you. You just, in response to Justice Harris's question, you just asked him whether he was arguing for a technical compliance. First of all, he's not arguing. He's asking you the question. I understand. I apologize. Let me turn this. Let me ask you this. Is this, the other side of that is, at best, isn't the difference in language that we're talking about a technical, just a technical defect? I understand that there's a line of cases that hold that technical defects won't invalidate the notice, namely Pejor and Luca. Now, both those cases are distinguishable here for two major reasons. One, they dealt with statutory notice under the so-called race period notice, which has been repealed and is no longer an O equivalent. Secondly, the notices in that case, the content thereof were fine. No one complained about the actual content of the notice. The complaint was in Pejor the notice was sent by an entity that wasn't the mortgagee at the time. However, the defendants were dealing with that entity while the letter was sent. In Luca, the issue, again, was not the content of the notice, but the notice was, there were two borrowers and the notice was sent to borrower one at address X, the proper address, but it was not sent to borrower two. And although both agreed that they had received the notice and had not complained about the contents thereof, they complained that the notice wasn't properly addressed to them. So I believe here you have a distinguishable situation where the actual content of the notice is the problem, not necessarily how it was sent. How were the defendants prejudiced by this? Let's call it a technical defect for purposes of my question. What prejudice resulted from that? I mean, other than the obvious of having a foreclosure case filed against them. Well, that was because they didn't pay their mortgage. Correct. But according to Assetto, a foreclosure case couldn't even be filed unless proper notice was sent. The record does show earlier on, and I know it's a voluminous record with a lot of repeated files, but the record does show early on that the borrowers did try to do a work out, and through some sort of frustration it never happened. So the prejudice would be that the notice of acceleration is brought forward to advise borrowers of what they can do to work with the bank and hopefully get their house, well, not back, but stay in their house. I think that's a resulting prejudice where that conversation is kind of defeated. Counsel, as far as your lines in Assetto, there weren't any other mandatory information in Assetto as opposed to what you have here, correct? Not necessarily. There are five total letters in Assetto. Four of them were actually sent prior to acceleration. The fifth was sent after acceleration. So that's not even a starter. The fourth sent prior to acceleration did say that the loan was in default, but it did not say that we are going to accelerate. It just said we might do something. All kinds of things, as opposed to what we have here, which is an interpretation or a technicality more than what was in Assetto, correct? I would say that this letter was more encompassing than the letters in Assetto. But again, we're dealing with contractual condition precedence. Well, I commend you for that concession because often you don't see that. I know when to not cry foul, despite this appeal. But again, we're dealing with contractual conditions precedence. And if we don't hold entities to actually follow the conditions that they write in their own contracts, we open up the doors to not just mortgage foreclosure cases, but any case dealing with a mortgage where we have to look at the mortgage and say, well, that's good enough or that's not good enough. Contracts should be able to be read objectively, not subjectively. And I think that's the crux of my underlying issue here. Think about the property address. Want to talk about that? In what regards? For what appears in the record, it's very hard to really establish an argument. And I can give you anecdotes about me walking by the property address, but I can't. I do concede that the PIN at the time, or the PIN identification, legal description, sorry, at the time the mortgage was executed was correct, but I do not know and I don't think plaintiffs properly explain, as they should have in their motion for reformation, why the address was wrong, the common address. And I think that's a real important point because letters and notices aren't sent to legal descriptions. They're sent to property addresses. So for them to overcome the burden to reform a mortgage, they're not only supposed to show what the mistake was, but why did that mistake occur. And from a procedural standpoint, I don't think that ever occurred in this case. And I know I made arguments that I was not able to bring forward a rebuttal to that because the only time any documents attached regarding the property address were filed on a reply brief to the motion for reformation. If you look at the record, those documents are very hard to read. Counsel, let me ask you this question. When you argue that the phrase, you may have the right to bring a court action, which is not in the document or which is not in the notice, right? Is that what you're saying? Can you repeat that question? I'm sorry. You claim that the phrase, you may have the right to bring a court action, is not included. Correct. No. That phrase does not appear in paragraph 22. It does appear in the notice. The phrase in paragraph 22 says that you may, in a judicial proceeding, start against you, and I'm kind of paraphrasing, but judicial proceeding is the term you use. You can bring any defenses that you might have to acceleration or foreclosure. Right. So are you arguing as well that this is somehow confusing for your client? Or it does not contain their right? It makes it seem that the only way they could bring any sort of defense to the acceleration is bringing their own cause of action rather than responding to judicial proceedings. Now, I know that's a tough argument to make because here I am fighting the appeal, but it should have never gotten to that point of a case being filed according to esoteric. Thank you. I don't think I have anything further that's mind-blowing, so I'm going to muster. Do I just have any other questions? That's for rebuttal. Thank you. Good afternoon again, Your Honors. Rosa Tonealan for the plaintiff. This case is really the questions that were posed just now are really focused on what this case is about, which is a subjective post or with hindsight reading of what is otherwise a valid acceleration notice clause. Judge Harris, you asked, doesn't the letter that was sent have everything? The answer is yes, it does. It has everything. It has the, it identifies the amount due. It tells you what happens if you don't pay that amount. It tells you when you must pay that amount. And it also discloses the fact that the failure to cure will result in foreclosure. Now, all that's conceded in the arguments that were submitted and just now in our oral comments here, there's no problem with those, that core requirement. That is satisfied. The issue here now is does this phrase about being able to initiate an action, does that somehow create some ambiguity that now invalidates what is otherwise a valid acceleration clause? Asituto did not touch on that. Asituto did set out that language, but it didn't comment or even, it wasn't even asked to decide, is this language sufficient? What it was asked to do in that case was, was the requirement to send the notice, was that even satisfied? And the answer was no in that case because despite sending five letters, none of those letters contained the information that was required at the time of which they were sent. Yes, that last letter referenced a default, but by that point, that mortgage had already been accelerated. So the notice due in advance of the acceleration was never sent. So Asituto really does not guide this court here. What does guide this court is the decision in HEFT, and that is City Mortgage Inc., the HEFT, H-O-E-F-T, 2015, 1st, 150459. It's referenced in our briefing. That case teaches that, there was an ambiguity in that case. The borrowers, citing the exact same requirements in paragraph 22 or section 22 of the mortgage, they, like here, claimed that there was an ambiguity or defect in the notice, not because it didn't provide them the information they needed. Just like in HEFT, this letter says all that information. It requires, you know, what happens, your consequences, all that, and what's due. The argument there in HEFT was, well, you didn't tell us the exact amount. Well, there's some ambiguity because there's some time that happens between when we receive this letter and when we actually make the payment, so we actually don't know how much is due. And because of that, the letter's invalid. This court rejected that argument, saying, no, you have the information there, and the passage of time can't possibly account for, or you can't hold the bank accountable for that because the passage of time will change, the daily amount due changes. But that doesn't mean that the letter doesn't give you the notice that's required. So you take that in that analogous situation, there's an ambiguity about what the amount due, and here the ambiguity is, what does it mean to initiate a court action? So what counsel would like you to do is, you know, apply this, what he calls objective construction. It's actually a very subjective construction because in response to foreclosure, defenses are not just asserted in a foreclosure. As we know, defendants in a foreclosure may initiate a bankruptcy. That's a defense to foreclosure because what happens when you file a bankruptcy? You get an automatic stay. Borrowers are also known to file TILA claims or other federal causes of action in a separate complaint. They initiate those in federal court. That also impacts the ability to foreclose to some extent. It might stall the matter a little bit, but it's still an indirect defense to foreclosure. So what counsel is saying here is because the letter did not specifically say, you can initiate a response or a defense in the foreclosure itself that this letter is defective. Well, what's the problem with that? If the banks were required to make that specific language, counsel or some of his colleagues would be right back up here arguing to this court, Judge, they didn't tell us we could file bankruptcy. They didn't tell us we could initiate another cause of action. So now all of a sudden we have what is really a subjective hindsight view of what this acceleration notice did and the notice that it provided. These defendants, Judge Kennedy talked to prejudice. There was zero prejudice here. This is not so much about prejudice as it is about consequences. There was a failure to pay on the loan. There was a default. The notice was given, and the result was the foreclosure was initiated. Now, defendants had no trouble asserting numerous and varied defenses. They went through a series of lawyers. They were never not represented. They had every opportunity to protect their home from foreclosure. They simply the only argument they have now is that the initial letter that underscores the entire right to foreclose, that that was defective. The argument is very technical. It is not substantive at all. It does not invalidate this letter, and we would urge the court to agree with the trial court's finding on that in that regard. Let me just ask you a question, a follow-up question to what I asked Mr. Foley. Is strict compliance, I mean, is the language supposed to be because of what's at stake, which is foreclosure and the loss of a person's home, is it unreasonable to expect the bank to strictly conform to the language? No, but I would say that they did. They strictly complied with what was required in the mortgage. The mortgage requires them to receive certain notices, and they received those notices. What counsel wants is a hindsight, and let's rephrase this, it should have said this. But as I said, if you start limiting, providing limiting language in there, someone's going to come in and say, well, that means I didn't know I had a right to file a bankruptcy, or I didn't know I could do these other things in addition to outside of the foreclosure. What this says is you can defend yourself from this foreclosure. You'll have the right to assert your defenses. And it leaves open to the borrower how they want to assert those defenses. There is simply nothing wrong with this. Heff teaches that these ambiguities are not going to invalidate an acceleration notice where that notice is otherwise compliant and gives the very specific information that's required, that being the amount due, when it's due, the consequences for not paying it, and the fact that it will result in a foreclosure. Counsel, where's Heff located in your brief? Sorry. Oh, I can tell you. I'm just not familiar with it. Just give me the site then. I just don't see it. Yeah, I don't know if you cited it. I don't remember seeing it. We're familiar with it. We found it on our own, but I didn't see it. Oh, okay. Well, it's 2015 ILAC First 150459. With respect to the reformation argument, that issue is really a purely procedural one. If you notice, there's no substantive argument about the validity of the reformation. And it's very interesting. Well, there's a reason why that is. That's because when the original complaint was filed and it was amended subsequently to add a party, the legal description was always the same. It was always the one that didn't match the mortgage. But interestingly enough, the defendant, represented by counsel the entire time, always admitted that the legal description was accurate. That's because everybody knew it was wrong. Well, nobody knew it was wrong. It was a mutual mistake. It wasn't until the amended complaint was filed that the answer came in saying that the defendants that they deny the allegations in subparagraph 3J, which is where the legal description is found, and that they affirmatively stated that the legal description given in paragraph 3J does not match the legal description in the mortgage. So that's an admission and part of the answer. And then instead of, because the procedural argument here is that the reformation count was insufficiently pled, instead of moving to dismiss, they answer. So any procedural irregularity with the reformation count was waived at that point. Now, plaintiff did file a motion for reformation in conjunction with the summary judgment motion, seeking to resolve both counts at the same time or simultaneously. And in response to that, there was really more of the same. Well, this isn't sufficient. This isn't enough. Now, counsel argues in his brief that this was something akin to an ambush, that all of a sudden they didn't know how to handle this. And they cite to a case for that proposition, which is completely distinguishable. The case that they cite for their ambush argument is Kosterman. And in that case, you have a situation where the trial court struck an affirmative defense on standing in a foreclosure case. And because that defense was stricken, then the plaintiff or the defendants in that case couldn't develop their standing defense. So when summary judgment came about and all of the evidence of standing was submitted, they had no way to refute it. Very important difference between this case and that case is that all the standing information that the defendants and Kosterman needed was within the control of the plaintiff. Unlike here, these defendants lived in this property. They knew they had the address. They knew what address they lived at. They admitted the earlier legal correctness of the earlier legal description, which meant they didn't understand. So the point being judged that the reformation count was any procedural or regularities with it were waived. How about forfeited? Well, they could be forfeited. They were forfeited. There's a difference. Yes. So they were forfeited, and then when there was a formal response to it, there's the criticism that the reply brief had all the information that should have been given at the front end. Again, there could have been leave to serve reply, could have been requested. It was not. We don't have the transcript. We don't know what was said at the hearing, but we, based on that, have to accept that the trial court ruled properly with the evidence presented before it. For those reasons, Your Honor, we would ask that the judgment of the trial court be affirmed. Thank you, counsel. Mr. Foleman, brief rebuttal, please. Thank you again. Very briefly, I would like to touch on the Heft case because counsel brought it up, and it was cited to an esoteric. Heft, the issue in Heft was that the borrower complained that the dollar amount stated in the acceleration letter was wrong. Now, paragraph 22 here in Heft had the exact same paragraph. It says that the lender must state an action required to cure the fault, and half the action required to cure the fault was to pay this amount of money. The borrower said that amount of money is wrong. It didn't say that the content, there was missing content in the acceleration letter. It just said that the dollar amount was wrong, and I believe it was only about a few pennies. So the Heft argument is mighty technical, although all these arguments are obviously mighty technical. Also, as in regards to the count for reformation, there was an answer filed. Basically, it was similar to the response to the motion for reformation, saying that reformation was not properly planned when the bank moved for reformation. According to the Cook County Circuit rules, there were certain things you needed to attach to your motion. Those things were missing. The only time they showed up were on reply, and obviously the record doesn't show anything after that reply because ruling was held seven days later. If there are any other questions, I would like to answer them, but otherwise, appellate rests. Thank you, counsel. Thank you. This matter will be taken under advisement and court is adjourned.